JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 2:22-06010 JAK (JPRx) | Date | September 25, 2023 |
|---|---|---|---|
| Title | Jaime Camilo Camarena-Regalado v. Southern California Permanente Medical Group, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION TO REMAND (DKT. 10)**

**I.     Introduction**

Jaime Camilo Camarena-Regalado ("Plaintiff") brought this action against Southern California Permanente Medical Group ("SCPMG"), Kaiser Foundation Health Plan, Inc. ("Kaiser") and Does 1–10 (collectively, "Defendants") in the Los Angeles Superior Court. Dkt. 1, Ex A (the "Complaint"). The Complaint advances seven causes of action: (1) violation of Cal. Lab. Code §§ 1102.5–1105; (2) wrongful termination in violation of public policy; (3) retaliation in violation of Cal. Health & Safety Code § 1278.5; (4) California Family Rights Act ("CFRA") interference in violation of Cal. Gov't Code § 12945.2 and Cal. Code Regs. tit. 2, §§ 7297.4, 7297.9, 11091; (5) defamation; (6) failure to pay all wages due upon termination in violation of Cal. Lab. Code §§ 200–202, *et seq.*; and (7) failure to pay overtime compensation in violation of Cal. Lab. Code § 1194. On August 23, 2022, Defendants filed an answer to the Complaint. Dkt. 1, Ex. D.

On August 24, 2022, Defendants removed this action, based on a claim of federal question jurisdiction under 28 U.S.C. § 1331. Dkt. 1 (the "Notice of Removal"). On September 23, 2022, Plaintiff filed a Motion to Remand. Dkt. 10 (the "Motion"). On October 7, 2022, Defendants filed an opposition to the Motion (Dkt. 11, the "Opposition"), and a request for judicial notice in support of the Opposition. Dkt 12 (the "RJN"). On October 14, 2022, Plaintiff filed a reply in support of the Motion (Dkt. 13, the "Reply), and objections to evidence submitted in support of the Opposition. Dkt. 13-2 (the "Evidentiary Objections"). On October 28, 2022, Defendants filed "Objections and Request to Strike Plaintiff's New Arguments and Evidence on Remand Reply Brief, or in the Alternative, Requesting the Court Accept Defendant's Response as a Sur-Reply." Dkt. 15 (the "Sur-Reply"). On October 31, 2022, Plaintiff filed an objection to the Sur-Reply. Dkt. 16 (the "Objection to Sur-Reply").

A hearing on the Motion was held on November 15, 2022, and the matter was taken under submission. For the reasons stated in this Order, the Motion is **GRANTED-IN-PART AND DENIED-IN-PART**. The Motion is **DENIED** as to Plaintiff's request that this entire action be remanded to the Los Angeles Superior Court. The Fifth, Sixth and Seventh Causes of Action are **DISMISSED WITHOUT PREJUDICE**. The Motion is **GRANTED** as to whether supplemental jurisdiction will be exercised over the remaining state law claims. Therefore, the First, Second, Third and Fourth Causes of Action are **REMANDED** to the Los Angeles Superior Court, at its Stanley Mosk Courthouse, Case No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 2:22-06010 JAK (JPRx) | Date | |
|---|---|---|---|
| Title | Jaime Camilo Camarena-Regalado v. Southern California Permanente Medical Group, et al. | | |

22STCV22938.

## II. Factual Background

### A. Parties

Plaintiff is a resident of Los Angeles County in California. Dkt. 1, Ex. A ¶ 1. Defendants are corporations organized under California law who are present here. *Id.* ¶ 2.

### B. Allegations in the Complaint

The Complaint alleges that Plaintiff worked as an Emergency Services Technician at Kaiser from April 6, 2009, to March 4, 2022. *Id.* ¶¶ 6, 30. It is alleged that, throughout his tenure, Plaintiff regularly received a performance rating of "Meets Expectations." *Id.* ¶ 7. It is alleged that, as his employment proceeded, Plaintiff became more outspoken about the alleged "substandard patient care that he was seeing at Kaiser," including claimed "understaffing in the Emergency Department (ED) that risked patent safety." *Id.* ¶ 16. It is further alleged that the "'Rapid Medical Exam' system was being used to manipulate data and times that made it appear that patients were being seen and treated sooner than they actually [were]," and that this caused improper triaging and untimely treatment. *Id.* ¶ 17.

The Complaint alleges that Plaintiff reported the improper care of patients to the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO") in 2021 and 2022. *Id.* ¶¶ 18–22, 24. It is alleged that Plaintiff raised these patient safety concerns, as well as others regarding alleged shortages of critical supplies and staffing changes, "internally to Kaiser administration (supervisors and charge nurses including but not limited to Jessica Almeida, Jesus Gomez, Jose Solzano, Lucy Rivera, and Kathy Kigerl), Kaiser compliance, and externally to J[CA]HO." *Id.* ¶¶ 23–26. It is alleged that representatives of JCAHO visited the ED on February 22, 2022, and interviewed Plaintiff. *Id.* ¶ 27. During the interview, Plaintiff allegedly "reported the toxic and retaliatory work environment created by [the] administration's lack of receptiveness to patient care concerns. This culture detrimentally impacted patient care, including the loss of several staff, leaving the department further understaffed with less experienced healthcare professionals." *Id.* ¶ 28. It is alleged that several administrators, including Almeida, Gomez and Solzano, observed Plaintiff enter and exit the place where the interview was conducted. *Id.* ¶ 27.

The Complaint alleges that, on March 2, 2022, Plaintiff "took a medical leave due to the disabling stress, anxiety, and depression he was suffering from." *Id.* ¶ 29. It is alleged that Plaintiff's employment was terminated on March 4, 2022. *Id.* ¶ 30. It is alleged that "[a]s a pretext for retaliation," Plaintiff's termination memorandum stated that Plaintiff had "submitted fraudulent timekeeping," that Plaintiff's actions were "unacceptable, unprofessional, and dishonest," and that "the misrepresentation of [his] timekeeping resulted in [him] receiving pay to which [he was] not entitled." *Id.*

### C. Allegations in the Notice of Removal

In the Notice of Removal, Defendants contend that there is original, federal jurisdiction over this matter because three of Plaintiff's claims -- the Fifth, Sixth and Seventh Causes of Action -- are preempted under section 301 of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq*. ("LMRA"). They

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | LA CV 2:22-06010 JAK (JPRx) | Date |
| Title | Jaime Camilo Camarena-Regalado v. Southern California Permanente Medical Group, et al. | |

also contend that Plaintiff was, at all relevant times, a member of United Healthcare Workers-West (the "Union"). Dkt. 1 ¶¶ 9, 14. Defendants also argue that the terms of Plaintiff's employment were governed by a collective bargaining agreement between SCPMG and the Union (the "CBA"). *Id.*

Defendants argue that the CBA is a qualifying collective bargaining agreement under Cal. Lab. Code § 514, which creates an exception to California's statutory overtime requirements for employees who are subject to such agreements. *Id.* ¶¶ 17,19. For these reasons, Defendants argue that both the overtime claim and the derivative claim for waiting time penalties, are preempted under the LMRA. *Id.* ¶¶ 20–21.

Defendants also argue that Plaintiff's defamation claim is preempted under the LMRA for two reasons: (1) the termination notice containing the allegedly defamatory statements was required by the CBA; and (2) the allegedly defamatory statements arose out of investigatory proceedings required by the CBA. *Id.* ¶ 22. The Removal Notice alleges that the CBA states, "[n]o Employee shall be disciplined or discharged without just cause. Any Employee who is discharged shall be informed in writing at the time of the discharge of the reason(s) for the discharge." *Id.* ¶ 24 (quoting Dkt. 1, Ex. F § 1079). Defendants also contend that the CBA provides a process of "progressive discipline" for Union members. *Id.* ¶ 27. The Removal Notice also asserts that there is supplemental jurisdiction over any of Plaintiff's remaining state law claims. *Id.* ¶ 31.

### III.     Preliminary Issues

    A.     Defendants' RJN

"When considering a motion for judgment on the pleadings, th[e] court may consider facts that are contained in materials of which the court may take judicial notice." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (internal quotation marks and citation omitted). Federal Rule of Evidence 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Defendants request judicial notice of Exhibit F to the Opposition, which contains a schedule of California Minimum Wage rates from 2017–2023, as published by the California Department of Industrial Relations. Dkt. 12 at 2, 4-6. Plaintiff does not oppose this request or deny the accuracy of the contents of Exhibit F. "[G]overnment agency websites . . . have often been treated as proper subjects for judicial notice." *Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670-SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008). Therefore, the RJN is **GRANTED**.

    B.     Plaintiff's Evidentiary Objections

Plaintiff objects to one paragraph in the Declaration of Jo Ann Raval (Dkt. 11-1, the "Raval Declaration") and five paragraphs in the Declaration of Jeremy Lyon (Dkt. 11-2, the "Lyon Declaration"). *See* Dkt. 13-2. Although both declarations are relevant to the issues presented in the Motion to Remand, neither is determinative of the matters addressed in this Order. Therefore, the Evidentiary Objections are **MOOT**. However, for completeness, and notwithstanding that the Plaintiff did not present them in the form required by the Standing Order, the merits of these objections are addressed as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 2:22-06010 JAK (JPRx) | Date | |
|---|---|---|---|
| Title | Jaime Camilo Camarena-Regalado v. Southern California Permanente Medical Group, et al. | | |

| Evidence at Issue | Objection | Ruling |
|---|---|---|
| Raval Decl., Dkt. 11-1 ¶ 4: "As the termination letter explains, on December 18, 2021, Mr. Camarena-Regalado was scheduled to work from 7:00 a.m. to 7:30 p.m. in the ER. However, security records show that Mr. Camarena-Regalado left the ER at 6:23 p.m. and went to the gym, where he stayed until 7:22 p.m. However, Mr. Camarena-Regalado timecard records showed that he worked until 7:30 p.m. Following an investigation, SCPMG concluded that Mr. Camarena-Regalado engaged in timecard fraud, and received pay to which he was not entitled. As a result, SCPMG issued Mr. Camarena-Regalado a Level 5 discipline under the CBA and terminated his employment." | FRE 602 [Lacks Personal Knowledge]; FRE 801 [Hearsay]; FRE 401 [Relevance] | MOOT (It is unnecessary to consider the statements by Raval as the termination letter has been submitted and can be reviewed.) |
| Lyon Decl., Dkt. 11-2 ¶ 4: "Under Kaiser's Corrective/Disciplinary Action Policy, discipline for represented employees like Mr. Camarena-Regalado (i.e., employees who are covered by a CBA), is determined according to the provisions of the applicable CBA. A true and correct copy of this policy, in effect at the time of Mr. Camarena-Regalado's termination and applicable to Mr. Camarena-Regalado, which is kept and maintained in the regular course of business, is attached as Exhibit B." | This document is not part of the CBA. It is a Kaiser Human Resources Policy by its own terms. FRE 106 [Incomplete Evidence / Out of Context]; Rule 901 [Lack of Foundation]. | OVERRULED |
| Lyon Decl., Dkt. 11-2 ¶ 4: "The CBA utilizes a process of "progressive discipline," where employee misconduct is generally addressed according to different factors, such as the severity of the misconduct and ensuring fairness in application of the discipline." | This misstates the content of the SEIU CBA regarding discipline which only states, "It is the Employer's intent normally to make use of progressive discipline in accordance with established practices and policy." (Page 125, Exhibit C) [Incomplete Evidence / Out of Context]; Rule 901 [Lack of Foundation]. | MOOT (It is unnecessary to consider the statements by Lyon as the CBA has been submitted and can be reviewed.) |
| Lyon Decl., Dkt. 11-2 ¶ 5: "As part of the CBA, Mr. Camarena-Regalado's union, United Healthcare Workers-West ("Union") and SCPMG are parties to a "labormanagement partnership," called the "National Agreement," by which they pledged to work together for common goals. A true and correct copy of the National Agreement between SCPMG and the union that was in effect on March 4, 2022 is attached as Exhibit D. The National Agreement includes a framework for dispute resolution under the CBA, and provides guidance and expectations regarding the appropriate level of discipline, which includes the 'Issue Resolution/Corrective Action User's Guide.' A true and correct copy of the "Issue Resolution/Corrective Action User's Guide" is attached as Exhibit E." | This is not part of the CBA at-issue. FRE 801 [Hearsay]; FRE 401 [Relevance]. | OVERRULED |
| Lyon Decl., Dkt. 11-2 ¶ 6: "Although discipline under this framework may start at a lower 'level' and escalate over time – e.g., a verbal warning first, followed by a written warning, etc. | This is not part of the CBA at issue. FRE 801 [Hearsay]; FRE 401 [Relevance]. | MOOT (It is unnecessary to consider the |

Page 4 of 15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 2:22-06010 JAK (JPRx) | Date | |
|---|---|---|---|
| Title | Jaime Camilo Camarena-Regalado v. Southern California Permanente Medical Group, et al. | | |

| | | |
|---|---|---|
| – there is no guaranteed, predetermined path for issuing discipline, and steps can be skipped based various factors (i.e., each instance of a violation can range from a verbal warning to the termination of employment, depending on the specific facts and circumstances). When considering whether to terminate employment, management must consider and assess whether the misconduct is egregious enough that it triggers a higher level of discipline under the CBA. When management concludes that such egregious conduct occurred, they will include that information on the termination letter, and use words to that effect, such as 'gross misconduct,' and provide the basis, such as the employee engaged in 'fraud' or 'misrepresentation,' or that the employee engaged in 'dishonest' conduct. This information is included in the termination letter to put the represented employee and the union on notice of their assessment and opinion, which assists and informs the parties' understanding for any future dispute resolution under the CBA." | | statements by Lyon as the policy has been submitted and can be reviewed.) |
| Lyon Decl., Dkt. 11-2 ¶ 7: "The CBA contemplates that employees may submit grievances regarding whether they were subject to a shift agreement, and whether overtime is owed. The union, management, and the arbitrator evaluate a number of factors, including whether employee signed an agreement, their job position, the employee's knowledge of the schedule and how long they worked on the alternative schedule without raising a dispute (i.e., did the employee raise the dispute after a single pay period, or did they work for years on the schedule), and the past patterns and practices of the department, the Union, and management." | Employees are not required to submit and pursue their Union grievances to exhaust. FRE 401 [Relevance]; *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009); *see also Cicairos v. Summit Logistics, Inc.* 133 Cal. App. 4th 949, 959–60 (2005). Further, there is no explanation of why an arbitrator would have to consider these factors, and what provisions of the CBA define these considerations and would inquire interpretation. FRE 401 [Relevance]; *Johnson v. San Francisco Health Care & Rehab Inc.*, 2022 WL 2789809, at *6 citing *Wilson-Davis v. SSP Am., Inc.*, 434 F. Supp. 3d 806, 813 (C.D. Cal. 2020). | MOOT (It is unnecessary to consider the statements by Lyon as the CBA has been submitted and can be reviewed.) |

      C.      Defendants' Objections to New Arguments and Evidence in Reply Brief

In their Sur-Reply (Dkt. 15, the "Sur-Reply"), which was filed without leave to do so, Defendants objected to Plaintiff's proffer of Kaiser Permanente's "Guidelines for Determining Corrective/Disciplinary Action for Serious Offenses" as Exhibit A to the Rager Declaration for the first time in the Reply (*see* Dkt. 13-1, Ex. A), claiming that it is both untimely and not properly authenticated. Dkt. 15 at 5. Defendants further argue that Exhibit A is irrelevant because it is dated in 2009, but Plaintiff was terminated in 2022. *Id.* Because Exhibit A is not considered in the analysis of this Order, the objection is **MOOT**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | LA CV 2:22-06010 JAK (JPRx) | Date |
| Title | Jaime Camilo Camarena-Regalado v. Southern California Permanente Medical Group, et al. | |

Defendants also object to the new argument in the Reply that the CBA does not satisfy the requirements of Cal. Lab. Code § 514. *Id.* at 3–4. Defendants argue that "[b]y waiting until [the] reply, Plaintiff has deprived Defendants of a full and fair opportunity to respond to his arguments, including why they are wrong, or why Plaintiff's citations to new authorities are misleading, distinguishable, or do not support her arguments." *Id.* at 3. Plaintiff responds that the argument regarding Section 514 is "exclusively" a reply to an argument raised in the Opposition. Dkt. 16 at 2. Plaintiff further states that the Sur-Reply was filed without leave to do so, and that Plaintiff "will not address the errors made in the arguments (and admission) that Kaiser is 99.99% compliance with the requirement to pay all their union employees 130% of the minimum wage." *Id.*

Although the Sur-Reply was filed without leave to do so, it is considered because Plaintiff's did not present arguments as to whether the CBA qualified under Section 514 in its initial briefing. Because Defendants' arguments regarding Section 514 proffered in the Notice of Removal, the Opposition and Sur-Reply, have all been considered, there is no prejudice caused by the new positions stated in the Reply. Therefore, Defendant's request to strike the new arguments is **DENIED**, and leave to file the Sur-Reply is **GRANTED**.

**IV.    Analysis**

      A.    Legal Standards

Section 301 of the Labor Management Relations Act ("LMRA") "vests federal courts with jurisdiction to hear suits 'for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce … without respect to the amount in controversy or without regard to the citizenship of the parties.' " *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1009 (9th Cir. 2018) (quoting 29 U.S.C. § 185(a)). "By enacting the LMRA, Congress completely preempted state law for certain labor-related claims." *Id.* "In these areas, 'the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.' " *Id.* (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983)). "In other words, a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019).

"Critically, 'not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301.' " *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)). "[T]he Supreme Court has stressed that '§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law.' " *Curtis*, 913 F.3d at 1152. "For this reason, '[s]etting minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights remains well within the traditional police power of the states,' and claims alleging violations of such protections will not necessarily be preempted, even when the plaintiff is covered by a CBA." *Id.* at 1152 (quoting *Alaska Airlines v. Schurke*, 898 F.3d 904, 919–20 (9th Cir. 2018) (en banc)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 2:22-06010 JAK (JPRx) | Date | |
|---|---|---|---|
| Title | Jaime Camilo Camarena-Regalado v. Southern California Permanente Medical Group, et al. | | |

The Ninth Circuit has adopted a two-step process to determine whether a claim is preempted under § 301. *Curtis*, 913 F.3d at 1152. *First*, if the "asserted cause of action involves a 'right [that] exists solely as a result of the CBA,' " then " 'the claim is preempted, and [the] analysis ends there.' " *Id.* (alteration in original) (first quoting *Kobold*, 832 F.3d at 1032; then quoting *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)). "The essential inquiry is this: Does the claim seek 'purely to vindicate a right or duty created by the CBA itself[?]' " *Id.* (alteration in original) (quoting *Schurke*, 898 F.3d at 921).

*Second*, if a "plaintiff's state law right is substantially dependent on analysis" of the CBA, then the claim is preempted. *Curtis*, 913 F.3d at 1153 (quoting *Kobald*, 832 F.3d at 1033). This second step "turns on whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the CBA." *Id.* (quoting *Kobold*, 832 F.3d at 1033). In this context, "interpretation" is "construed narrowly" and a state claim may "avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA." *Id.* "[C]laims are only preempted to the extent there is an active dispute over 'the meaning of contract terms.' " *Id.* (quoting *Schurke*, 898 F.3d at 921).

    B.    Analysis

        1.    <u>Whether the Overtime Claim is Preempted</u>

            a)    *Burnside* Step 1: Whether the Right Exists Solely as a Result of the CBA

Defendants argue that the overtime pay requirements stated in Section 510 of the California Labor Code do not apply to Plaintiff because he is covered by a qualifying CBA under Section 514. Dkt. 11 at 16–17. California Labor Code Section 510(a) provides a default rule for overtime pay. *Curtis*, 913 F.3d at 1153. It does not, however, apply to employees "working pursuant to . . . [a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514." *Id.* (quoting Cal. Lab. Code § 510(a)(2)). Section 514 provides:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code § 514.

Plaintiff argues that Section 514 does not apply for two independent reasons. *First*, Plaintiff contends that the CBA does not provide a regular hourly rate of pay of at least 130% of the state minimum wage for all Union employees. Dkt. 13 at 7–9. *Second*, Plaintiff argues that he never signed a waiver to work pursuant to an alternative workweek under the CBA. Dkt. 13 at 10–11.

                i.    Whether the CBA Is a Qualifying CBA Under Section 514

Plaintiff argues that, under the plain language of Section 510, a collective bargaining agreement "must satisfy Section 514's substantive requirements with respect to all covered employees in order to render Section 510 inapplicable to any particular employee." Dkt. 13 at 7 (quoting *Baltazar v. Ace Parking*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | LA CV 2:22-06010 JAK (JPRx) | Date |
| Title | Jaime Camilo Camarena-Regalado v. Southern California Permanente Medical Group, et al. | |

*Mgmt., Inc.*, 2022 WL 1589297, at *3 (S.D. Cal. Mar. 14, 2022); *see also Huffman v. Pacific Gateway Concessions LLC*, 2019 WL 2563133, at *5–6 (N.D. Cal. June 21, 2019). Most district courts within the Ninth Circuit that have considered the issue have reached the same conclusion: A collective bargaining agreement must provide 130% of the minimum wage to every employee covered by the agreement in order to qualify for the Section 514 exemption as to any employee.[1]

Plaintiff identifies six jobs in the CBA wage scales with hourly wages that are less than $19.50, or 130% of the 2022 minimum wage of $15.00. Dkt. 13 at 9 (citing Dkt. 11-2, Ex. C at 155, 164, 198, 260). Defendants argue that Plaintiff incorrectly compared the 2022 minimum wage with the 2020 wage rates in the CBA. Dkt. 15 at 4. Defendants contend that only two of the six jobs identified by Plaintiff had hourly wage rates that fell below 130% of the 2020 minimum wage. *Id.*[2] In light of the thousands of jobs listed in the CBA, whether two or six were paid less than 130% of the minimum wage is not material. The issue is whether a collective bargaining agreement that provides for a wage rate of at least 130% of the minimum wage for almost all employees may qualify for the exemption under Section 514.

Defendants seek to distinguish the cases cited by Plaintiff "because none of them involve a CBA with a 99.99% compliance rate, and all of them are class actions involving claims pertaining to an entire group of employees." Dkt. 15 at 4. Defendants contend that the only decision within this District that addressed a similar collective bargaining agreement held that Section 514 was satisfied where "the vast majority of employee-categories in the CBA are assigned hourly rates of pay that greatly exceed § 514's requirement." *Id.* (quoting *Sachs v. Pankow Operating, Inc.*, 2022 WL 489696, at *6 (C.D. Cal. Feb. 16, 2022)).

*Sachs*, which presented a thoughtful analysis, did not distinguish between representative and non-representative actions, as Defendants suggest. Dkt. 15 at 4. *Sachs* involved a representative action. 2022 WL 489696, at *6. Nor did any of the cases cited by Plaintiff discuss the representative nature of those cases. *Sachs* did not distinguish *Huffman* by asserting that there was a 99.99% compliance rate as to the collective bargaining agreement at issue, but not as to the one in *Huffman*. *Sachs* also

---

[1] *See, e.g.*, *Gunther v. N. Coast Coop., Inc.*, 2020 WL 3394547, at *4 (N.D. Cal. June 19, 2020) ("This district has interpreted § 514 to require that a CBA must satisfy the section's requirements with respect to all employees covered by the CBA."); *Calderon v. Physicians for Healthy Hosps., Inc.*, No. 520CV01875JWHSPX, 2021 WL 871985, at *4 (C.D. Cal. Mar. 9, 2021) (same); *Johnson v. San Francisco Health Care & Rehab Inc.*, 2022 WL 2789809, at *3-4 (N.D. Cal. July 15, 2022) (same); *Sarmiento v. Sealy, Inc.*, No. 18-CV-01990-JST, 2019 WL 3059932, at *9 (N.D. Cal. July 12, 2019) (same); *Rooney v. Save Mart Supermarkets*, No. 220CV00671JAMFEB, 2020 WL 3819481, at *3 (E.D. Cal. July 8, 2020) (same); *Cranton v. Grossmont Hospital Corporation*, No. 22-CV-443 JLS (MDD), 2022 WL 16572028, at *6 (S.D. Cal. Nov. 1, 2022) (same); *Berreyes v. Southern California Gas Company*, No. 5:22-cv-01223-SSS-SPx, 2023 WL 2536720, at *2–3 (C.D. Cal. Mar. 16, 2023) (same). *Cf. Div. of Lab. Standards Enf't v. Save Mart Supermarkets*, No. 221CV07402ODWEX, 2022 WL 837206, at *5 (C.D. Cal. Mar. 21, 2022) (following *Huffman* in interpreting the nearly identical language of Cal Lab. Code § 245.5(a)).

[2] The copy of the CBA provided by Defendants in support of the Opposition states that it is "[e]ffective [t]hrough September 30, 2023. Dkt. 11-2 Ex. C at 10. The CBA also states that the wage rates are "[e]ffective October 11, 2020." *See, e.g.*, *id.* at 152. Defendants do not provide any evidence that the wage rates have been updated. Further, in the Lyons Declaration, which was signed on October 6, 2022, he declares that "[a] true and correct copy of the CBA that applied to Mr. Camarena-Regalado, which is updated and maintained in the regular course of business, is attached as Exhibit C." Dkt. 11-2 at 2–3. Therefore, the rates in Exhibit C appear to be current through 2022. Moreover, as explained in this Order, whether the 2020 or 2022 minimum wage is considered is not material to the analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 2:22-06010 JAK (JPRx) | Date | |
|---|---|---|---|
| Title | Jaime Camilo Camarena-Regalado v. Southern California Permanente Medical Group, et al. | | |

"acknowledge[d]" that the *Huffman* court's view is "a reasonable view and has been adopted by others" and that arguments in favor of that view "have merit." *Id.* at *5. *Sachs* then concluded that "it is not evident that they apply to this Court's reading of § 514, namely that the plural terms 'the employees' and 'those employees' refer not to *all* of the employees covered by a CBA but to all employees within the same classification as the employee bringing the action." *Id.*

In considering all of the cited cases, it is determined that the interpretation in *Huffman* is more persuasive. Accordingly, Plaintiff's overtime claim "involves a right conferred upon an employee by virtue of state law, not by a CBA." *See Huffman*, 2019 WL 2563133, at *6.

                ii.       Whether a Qualifying CBA Would Apply to Plaintiff

Plaintiff argues that his overtime claim would not be preempted by the CBA, even if it were qualifying because he was not "working pursuant to . . . [a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514." Cal. Lab. Code § 510(a)(2). Plaintiff alleges that he never signed the "alternative workweek / overtime waiver." Dkt. 13 at 10 (citing Dkt. 1-1 ¶ 79). Plaintiff claims that, because the waiver was required for an employee to be subject to the CBA, the CBA does not apply to his overtime claim. *Id.* at 10–11.

Defendants argue that determining whether the overtime provisions of the CBA applied to Plaintiff, in light of his alleged failure to sign the waiver, requires an interpretation of the CBA. Dkt. 11 at 20–21. Therefore, this issue is considered as part of the second step of the *Burnside* test.

            b)       *Burnside* Step 2: Whether the State Law Right Is Substantially Dependent on the CBA

Plaintiff argues that his overtime claim does not require any interpretation of the CBA because its provision on overtime rates is identical to that under California law, as codified at California Labor Code § 510 and IWC Wage Order 5-2001, § 3(b)(8a–b). Dkt. 10 at 20; Dkt. 13 at 14–15. The CBA includes the following terms:

        **D.**       **Alternative Schedules.**
                   The foregoing notwithstanding, nothing in this Section will preclude the establishment of Alternative Schedules (e.g. 10 hour shifts/12 hour shifts) at straight time pursuant to those Agreements.

        **E.**       **Overtime Rates.**

               **1.**       **Hours Worked in Excess of 8 in a Day or 40 Hours in a Week.**
                      All hours worked in excess of eight (8) in any day, or in excess of forty (40) in one (1) week, shall be paid at the overtime rate of one and one-half (1 1/2) times the straight time hourly rate.

    . . .

               **3.**       **Hours Worked in Excess of 12.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 2:22-06010 JAK (JPRx) | Date | |
|---|---|---|---|
| Title | Jaime Camilo Camarena-Regalado v. Southern California Permanente Medical Group, et al. | | |

> All hours worked in excess of twelve (12) hours in one (1) day shall be paid at the rate of two (2) times the straight time hourly rate.

Dkt. 11-2, Ex. C at 51.

Plaintiff also argues that, even if the language in the CBA were not identical to California law, no interpretation of the CBA would be required because a court could simply apply the undisputed overtime rates and wage rates listed in the CBA. Dkt. 10 at 20–21. Plaintiff also argues there is no need to consider the CBA because Section 510 simply requires knowledge of an employee's regular rate of pay in order to determine whether the employee was compensated for overtime in accordance with California law. *Id.* at 21. Plaintiff asserts that his regular wage rate would be readily ascertainable from his paystubs. *Id.*

Defendants respond that the overtime claim is substantially dependent on the CBA because the essence of that claim is whether Plaintiff was working a 12-hour shift schedule under the CBA, not how to calculate overtime. Dkt. 11 at 20. Defendants contend that "Plaintiff worked an Alternative Schedule since 2013, but now after *9 years* of working and being paid pursuant to the terms of that schedule, disputes that those provisions of the CBA apply to him." *Id.* at 12 (citing Raval Decl., Dkt. 11-1 ¶ 3) (emphasis in original). If Plaintiff agreed to work a 12-hour shift under the CBA, no overtime would be owed. *Id.* at 20. Defendants argue that, under the CBA, disputes regarding the "10 and 12 hour shift letters of agreement" are subject to the grievance and arbitration procedure set forth in the SEIU Cross-Regional Master Agreement. *Id.* at 12 (citing Dkt. 11-2, Ex. C at 404).

In support of this position, Defendants cite *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024 (9th Cir. 2016). *Id.* at 20–21. There, a nurse claimed that she was owed the premium rate for extra shifts because the CBA "provided that nurses are to be paid one and one-half times their regular pay rate for all hours worked above their regularly scheduled full-time equivalent shifts 'except when there is a change of schedule agreed upon by the Medical Center and nurse.' " *Kobold*, 832 F.3d at 1036. The issue in *Kobold* was "[w]hether or not there was an agreed upon change of schedule." *Id.* The CBA did not "directly and clearly explain what constitutes a 'change of schedule,' nor how an agreement . . . is to be made." *Id.* The court concluded that it had to "interpret the meaning of the agreement exception to resolve Kobold's state law claims," and, for this reason, the claims were preempted. *Id.*

Defendants argue that determining whether and how Plaintiff agreed to a 12-hour shift requires interpretation of the CBA and consideration of past practices with the Union. Dkt. 11 at 20–21. Defendants then contend that "[a]n arbitrator would consider, at minimum, Plaintiff signing of a shift agreement, his job position, Plaintiff's knowledge of the 12-hour shift schedule, how long he worked that schedule without raising any issues, and the past patterns and practices of the department, the Union, and management." *Id.* at 21 (citing Lyon Decl., Dkt. 11-2 ¶ 7). Defendants also claim that "these factors and considerations are inherently part of the interpreting the CBA." *Id.* (first citing *Kobold*, 832 F.3d at 1046 ("Under longstanding labor law principles, the scope and meaning of a collective bargaining agreement is not limited to the text of the agreement. Instead, the industrial common law— the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it."); then citing *Curtis*, 913 F. 3d at 1152 ("[B]ecause the CBA is designed to govern the entire employment relationship, including disputes which the drafters may not have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | LA CV 2:22-06010 JAK (JPRx) | Date |
| Title | Jaime Camilo Camarena-Regalado v. Southern California Permanente Medical Group, et al. | |

anticipated, it calls into being a new common law—the common law of a particular industry or of a particular plant."")).

Plaintiff replies that the Defendants have not explained why an arbitrator would have to consider these factors, and what specific provisions of the CBA would have to be interpreted. Dkt. 13 at 12. Plaintiff contends that Defendants have not met their burden of showing that interpretation of, and not merely reference to, the CBA is required. *Id.* Plaintiff argues "the issue is simple:" he "either signed the waiver or he did not." *Id.*

*Kobold* applies here. There, and in this case, the resolution of the overtime claim depends on whether the plaintiff agreed to an alternative workweek schedule. In both cases, the CBA provided no guidance on how an agreement is to be made. Therefore, as in *Kobold*, an arbitrator must interpret the CBA and apply "the industrial common law," including the "practices of the industry and the shop," to determine whether an alternative workweek agreement exists. *See Kobold*, 832 F.3d at 1046 (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581–82 (1960)).

Therefore, the sixth cause of action for overtime pay is preempted.

> 2. Whether the Waiting Time Penalties Claim is Preempted

Defendants argue that the seventh cause of action for waiting time penalties in preempted because it is derivative of the overtime claim. Dkt. 1 ¶ 21. Plaintiff does not dispute this contention. Therefore, the seventh cause of action for waiting time penalties is preempted.

> 3. Whether the Defamation Claim is Preempted

Plaintiff argues that the cause of action for defamation is "purely a creation of State law" because "whether or not **the content of a document** is Defamatory under California law requires no consultation, reference to or interpretation of the CBA." Dkt. 10 at 23–24 (emphasis in original).

Defendants respond that the defamation claim is preempted because the alleged defamatory statements were made solely in a discharge notice required by the CBA. Dkt. 11 at 22–23. The CBA provides: "No Employee shall be disciplined or discharged without just cause. Any Employee who is discharged shall be informed in writing at the time of the discharge of the reason(s) for the discharge." Dkt. 11-2, Ex. C at 139. It also states that the employer will "furnish copies of necessary and/or relevant documents or written statements used by the Employer as a basis for the disciplinary action" at the request of the employee or Union. *Id.* at 140.

*Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057 (9th Cir. 1989) held that a defamation claim brought by an employee was preempted under similar circumstances. It noted that the collective bargaining agreement at issue "require[d] employers to notify employees of intended disciplinary action in writing, and simultaneously to notify their Union." *Id.* at 1063. *Shane* then concluded that "[a]ny claim based on the discharge notification is, therefore, 'inextricably intertwined' with the CBA." *Id.* (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | LA CV 2:22-06010 JAK (JPRx) | Date |
| Title | Jaime Camilo Camarena-Regalado v. Southern California Permanente Medical Group, et al. | |

*Shane* applies to this action. Plaintiff contends that preemption is not warranted because, unlike the plaintiff in *Shane*, he properly alleged that Defendants maliciously republished the alleged defamation outside of Union activity. Dkt. 13 at 6 (citing Dkt. 1-1 ¶¶ 67, 69). The Complaint alleges that "[i]t was reasonably foreseeable that these statements would by republished by Plaintiff" and that "[t]he statements constitute defamation per se/per quod" because "[t]hey were made with malice as a pretext for an illegal termination." Dkt. 1-1 ¶¶ 67, 69.

Assuming, without deciding, that the malicious republication of defamatory statements beyond a discharge notice precludes preemption, Plaintiff's claim would still be preempted because he does not allege that Defendants republished any defamatory statements. The Complaint only alleges that it was "reasonably foreseeable" that he would republish them. Dkt 1 ¶ 67. As in *Shane*, the notice of discipline is "the only document[] in the record containing the allegations of wrongdoing," and Plaintiff fails to allege "to whom the defamatory information was published." 868 F.2d at 1063. Moreover, Plaintiff's own republication of the statements would not satisfy this standard.

Therefore, Plaintiff's fifth cause of action for defamation is preempted, and it is unnecessary to address the second prong of the *Burnside* analysis.

> 4. <u>Whether the Preempted Claims Should Be Dismissed</u>

Plaintiff seeks the dismissal of any preempted claims, and the remand of the remaining ones. Dkt. 10 at 31. Defendants argue that this request is improper under the forum manipulation rule for removed cases, which provides that a plaintiff's voluntary amendment eliminating the original basis for jurisdiction generally does not defeat jurisdiction. Dkt. 11 at 28 (citing *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007)). Defendants also claim that Plaintiff is attempting to engage in forum manipulation by requesting that the Court dismiss any claims "if (and only if)" they are determined to be preempted. *Id.*

"When resolution of a state-law claim is substantially dependent upon analysis of the terms of a collective-bargaining agreement, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp*, 471 U.S. at 220–221 (requiring dismissal either for "failure to make use of the grievance procedure established in the collective-bargaining agreement" or "dismissal as pre-empted by § 301"). Thus, that a claim is preempted under Section 301 does not mandate its dismissal. *See Jackson v. S. California Gas Co.*, 881 F.2d 638, 646 (9th Cir. 1989). An employee may pursue a preempted § 301 claim in federal court if the employee has exhausted grievance procedures in the applicable collective bargaining agreement or can show that the union breached its duty of fair representation. *Id.; Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53 (1965) (an employee generally may not bring an action for breach of a collective bargaining agreement unless he has exhausted contractual grievance procedures); *Vaca v. Sipes*, 386 U.S. 171, 185–86 (1967) (a party may obtain judicial review of his claim despite his failure to exhaust contractual remedies if he can show that the union breached its duty of fair representation).

Plaintiff argues that he did not have to follow a grievance procedure both because the CBA lacks a clear and unmistakable waiver of the right to bring an action in a judicial forum, and the failure to exhaust remedies under a CBA is an affirmative defense on which Defendants have the burden of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | LA CV 2:22-06010 JAK (JPRx) | Date |
| Title | Jaime Camilo Camarena-Regalado v. Southern California Permanente Medical Group, et al. | |

proof. Dkt. 10 at 21–22. In the Opposition, Defendants do not discuss whether Plaintiff was required to exhaust his remedies under the CBA.

When it is determined that a claim is preempted in the context of a motion to remand, some courts deny remand without dismissing or discussing the viability of the preempted claims. *See, e.g.*, *Torres v. Southern Cal. Permanente Med. Grp.*, No. CV221910MWFMARX, 2022 WL 2116339, at *8 (C.D. Cal. June 13, 2022). Other courts have dismissed preempted claims under similar circumstances, without discussing their viability. *See, e.g.*, *Lee v. CVS Pharmacy, Inc.*, No. LACV1600160JAKEX, 2016 WL 8711500, at *5 (C.D. Cal. July 29, 2016) ("Because Plaintiff's defamation claim is preempted by Section 301, the claim is dismissed"); *Kirton v. Summit Med. Ctr.*, 982 F. Supp. 1381, 1389 (N.D. Cal. Aug. 29, 1997) ("[B]ecause . . . the CBA governs the allegedly defamatory conduct, Plaintiff's defamation claim is preempted by section 301 and dismissed.").

The argument advanced by Defendants as to claimed "forum manipulation" is not persuasive. *Sparta Surgical Corp. v. National Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209 (9th Cir. 1998), which is among the cases cited by Defendants, is distinguishable. *Sparta* held that because "jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments . . . [A] plaintiff may not compel remand by amending a complaint to eliminate the federal question upon which removal was based." *Id.* at 1213. Unlike the plaintiff in *Sparta* and other cases on which Defendants rely, Plaintiff is not seeking to amend his complaint to warrant the remand of claims that would otherwise be subject to exclusive, federal jurisdiction. Instead, Plaintiff has requested the dismissal of any claims that are determined to be preempted. Dkt. 10 at 31. Defendants also cite opinions in which supplemental jurisdiction over remaining state claims was accepted notwithstanding the dismissal or settlement of the claims that were the sole basis for federal jurisdiction at the time of removal. *See, e.g.*, *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 715 (9th Cir. 1990). This does not concern whether it is appropriate to dismiss the claims that have been found to be preempted. The decision whether to exercise supplemental jurisdiction over the remaining state law claims, or remand them, is addressed in the following section.

As in *Lee* and *Kirton*, the dismissal of the preempted claims is warranted. Therefore, the Fifth, Sixth and Seventh Causes of Action are **DISMISSED**.

       5.    <u>Whether the Court Should Exercise Supplemental Jurisdiction Over the Remaining State Law Claims</u>

Where there is original jurisdiction over a claim, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) ("A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together.") (quoting *Trustees of the Constr. Indus. and Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003)). "The decision to exercise [supplemental] jurisdiction remains discretionary with the district court." *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1174 (9th Cir. 2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | LA CV 2:22-06010 JAK (JPRx) | Date |
| Title | Jaime Camilo Camarena-Regalado v. Southern California Permanente Medical Group, et al. | |

A district court may decline to exercise supplemental jurisdiction over a claim even if it arises out of a common nucleus of operative facts with a claim for which there is federal subject matter jurisdiction. Declining to exercise such jurisdiction is appropriate under the following circumstances:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *see also Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011).

The remaining claims include the following: the First Cause of Action, which alleges a violation of Cal. Lab. Code §§ 1102.5–1105; the Second Cause of Action, which alleges wrongful termination in violation of public policy; the Third Cause of Action, which alleges retaliation in violation of Cal. Health & Safety Code § 1278.5; and the Fourth Cause of Action, which alleges California Family Rights Act ("CFRA") interference in violation of Cal. Gov't Code § 12945.2 and Cal. Code Regs. tit. 2, §§ 7297.4, 7297.9, 11091. Dkt. 1-1 ¶¶ 31–72. Each cause of action concerns the facts surrounding Plaintiff's termination. *Id.*

Plaintiff argues that if any claim is preempted, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. Dkt. 10 at 27. *First*, Plaintiff argues that having the state law claims adjudicated in the Superior Court is appropriate as a matter of comity. *Id.* at 27–28. *Second*, Plaintiff argues that no prejudice would result to Defendants in light of the early stage of litigation. *Id.* at 28. *Third*, Plaintiff contends that his retaliation claim under Cal. Lab. Code § 1102.5 raises novel and complex issues of state law because *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703 (2022), presents a new burden-shifting structure for such claims. *Id.* at 29–30. *Finally*, Plaintiff contends that the first four causes of action, which concern retaliation, are the "gravamen" of this case, while the three potentially preempted claims are "ancillary." *Id.* at 30.

In the Opposition, Defendants advance the conclusory position that the state law claims "are so related to the preempted claims that they emanate from, and form part of, the same 'case or controversy,' such that they should all be tried in one action." Dkt. 11 at 27–28 (citing 28 U.S.C. § 1367(a); *Nishimoto*, 903 F.2d at 714).

The overtime claim and derivative waiting time penalties claim do not share a common nucleus of operative facts with the remaining claims. Plaintiff's contention that he should have been paid overtime because he never signed an agreement to work an alternative schedule, is independent of his contention that he was terminated in retaliation for whistleblowing. In contrast, Plaintiff's defamation claim is inextricably intertwined with his other claims because Plaintiff alleges that the content of the discharge notice served as pretext for his wrongful termination. Therefore, there could be a basis for exercising supplemental jurisdiction over all four state law claims. This would not change if the defamation claim were dismissed. *See Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991) ("It is generally within a district court's discretion either to retain jurisdiction to adjudicate the pendent state claims or to remand them to state court" even after the basis for removal jurisdiction is "dropped from the proceedings.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 2:22-06010 JAK (JPRx) | Date | |
|---|---|---|---|
| Title | Jaime Camilo Camarena-Regalado v. Southern California Permanente Medical Group, et al. | | |

Considering all of the foregoing issues, in the exercise of discretion, supplemental jurisdiction is declined. There is no claim remaining over which there was original federal jurisdiction, and certain elements of the claims raise somewhat novel issues under California law. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by statute*, 28 U.S.C. § 1447(c), *as recognized in Fent v. Oklahoma Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("Because we conclude that the district court properly dismissed all of the federal-law claims and the balance of factors does not tip in favor of retaining the state-law claims, we cannot say that the district court abused its discretion in dismissing the state-law claims without prejudice.").

Therefore, the First, Second, Third and Fourth causes of action are **REMANDED**.

   6. <u>Whether a Ruling on the Motion Should be Deferred Pending the Filing of an Amended Complaint</u>

If dismissal of any preempted claims was "not feasible," Plaintiff requested that the Court defer ruling on the Motion until an amended complaint is filed. Dkt. 10 at 31. Because a determination has been made that the claims will be dismissed, this request is **MOOT**.

**V.** <u>Conclusion</u>

For the reasons stated in this Order, the Motion is **GRANTED-IN-PART AND DENIED-IN-PART**. The Motion is **DENIED** as to the request that this entire action be remanded. The Fifth, Sixth and Seventh Causes of Action are **DISMISSED WITHOUT PREJUDICE**. The Motion is **GRANTED** as to the request that this Court decline supplemental jurisdiction over the remaining state law claims. Therefore, the First, Second, Third and Fourth Causes of Action are **REMANDED** to the Los Angeles Superior Court at its Stanley Mosk Courthouse, Case No. 22STCV22938.

**IT IS SO ORDERED.**

 : 

Initials of Preparer tj